UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DANIEL LAWRENCE MCCOY,<br>Defendant. | Case Nos. 4:19-cr-00067-JD-1<br>4:09-cr-00337-JD-1<br><br>**ORDER RE MOTION TO SUPPRESS** |

This order resolves defendant's motion to suppress. *United States v. McCoy*, No. 19-cr-00067-JD (N.D. Cal.), Dkt. No. 7.[1] Because the parties are familiar with the facts, the Court does not repeat them here except as relevant to the motion. The motion is denied.

**DISCUSSION**

**I.  THE SEPTEMBER 18, 2018 EVENTS**

McCoy challenges the seizure of evidence from his car by Richmond Police Officer Leah Joseph on September 18, 2018. He further challenges the subsequent seizure of $546.00 in currency and a pair of blue gloves at the Richmond Police Department Station House as fruits of the poisonous tree. Dkt. No. 7 at 5. McCoy argues that the warrantless search of his car was unconstitutional because officers lacked probable cause to arrest him and, further, that the police also lacked probable cause to search his car under the automobile exception to the Fourth Amendment's warrant requirement. *Id.* at 7. It is not necessary to address McCoy's additional argument that the search condition of his federal supervised release did not justify the search

---

[1] Defendant filed the same motion to suppress in his pending supervised release case. *United States v. McCoy*, No. 09-cr-00337-JD (N.D. Cal.), Dkt. No. 434. For the sake of clarity, all citations, unless otherwise noted, are to the docket in Case No. 19-cr-00037 because the supervised release matter is trailing the resolution of that case. Dkt. No. 6.

because the Court finds that the police had probable cause to arrest McCoy and that the search of the automobile is independently justified by the automobile exception to the Fourth Amendment's warrant requirement.

The gist of McCoy's claim is that the officers who arrested him and searched his car should have done more to confirm that a narcotics sale had taken place before acting. As McCoy correctly states, the arrest and search were made on the basis of a report by a Richmond CCTV Officer Danny Domingo to his fellow officers that a narcotics sale had taken place in front of 2400 Nevin Avenue in Richmond, California, between defendant and an unidentified male. Dkt. No. 7-2 (Joseph Police Report) at 1. Officer Domingo has served as a CCTV officer for nearly a decade, after serving as a sworn police officer with the Richmond Police Department for 25 years. Dkt. No. 13-1 (Domingo Decl.) ¶¶1-2. He has extensive training and experience in the identification and investigation of narcotics offenses and related conduct. *Id.* ¶¶ 2-5.

On September 18, 2018, Officer Domingo viewed defendant engage in what he believed to be a drug transaction based on his "training and experience observing drug transactions" and his "observations of McCoy." *Id.* ¶ 19. Via CCTV, Officer Domingo saw McCoy interact with an unidentified male who counted out U.S. currency, and then saw McCoy go to the trunk of his car, pull out a backpack, and begin to go through it. *Id.* ¶¶ 13-14. Officer Domingo saw McCoy take an object from the backpack and place it on the dashboard -- an object that, based on his "training and experience," he suspected was methamphetamine. *Id.* ¶ 15. Officer Domingo then witnessed the unidentified male hand money to McCoy and receive marijuana in return, and he saw defendant place the backpack back in the trunk of the car. *Id.* ¶¶16-18.

The Court has reviewed what Officer Domingo has affirmed to be "a fair and accurate recording of the video" he watched on September 18, 2018, and finds his declaration of the facts to be consistent with the video. Domingo Decl. ¶ 8; *id.*, Ex. 1. A reasonable person could conclude from the CCTV footage that defendant had committed a crime -- namely, an illegal drug transaction and possession of methamphetamine. *See Dubner v. City & County of S.F.*, 266 F.3d 959, 966 (9th Cir. 2001) ("Probable cause exists when, under the totality of the circumstances

known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime.").

Officer Domingo Officer Domingo contacted police dispatch to report the suspected drug transaction, and when an officer requested additional information, he advised the officer to look for a white Volkswagen Jetta and further that controlled substances would be found in a backpack in the trunk of the car. Domingo Decl. ¶ 20. He viewed officers arrive on the scene, open the trunk of the car and confirmed to Officer Joseph that the backpack she was holding was the bag he had seen and believed to contain narcotics. *Id.* ¶ 21.

Patrol Officer, now Sergeant, Erik Oliver responded to Officer Domingo's call to dispatch. He responded to the corner of 24th Street and Nevin Avenue in Richmond, California, and confirmed the presence of the white Jetta as described by Officer Domingo. Dkt. No. 13-2 (Oliver Decl.) ¶ 4. After another fellow officer arrived, Sergeant Oliver frisked McCoy, confirmed he was not carrying any weapons and placed him in handcuffs. *Id.* Sergeant Oliver observed Officer Joseph talking on the phone with someone he understood to be Officer Domingo, and saw her find, and subsequently search, a dark-colored backpack retrieved from the trunk of the Jetta. *Id.* ¶¶ 6-7. Inside the backpack, Officer Joseph located bags that she suspected contained marijuana, pills she identified as Oxycodone and Hydrocodone, as well as a crystal substance and a black tar substance, subsequently identified in lab tests as methamphetamine and heroin respectively. Joseph Police Report at 2. When McCoy was in the process of being booked, officers found $546.00 and blue latex gloves on his person and in his wallet. *Id.*

## II. THE OFFICERS HAD PROBABLE CAUSE TO ARREST MCCOY AND SEARCH HIS AUTOMOBILE

Unless an exception applies, the Fourth Amendment requires police to obtain a warrant before a person or his property can be searched. One exception to this requirement is a search incident to a lawful arrest. *See United States v. Johnson*, 913 F.3d 793 (9th Cir. 2019), *cert. docketed*, No. 19-5181 (Jul. 16, 2019). "Probable cause to arrest without a warrant exists when the facts and circumstances within the officers' knowledge are enough for a reasonable person to conclude that the suspect has committed a crime." *Eberhard v. Cal. Highway Patrol*, No. 14-cv-

3

01910-JD, 2015 WL 6871750, at *4 (N.D. Cal. Nov. 9, 2015). This inquiry requires a "fair probability" that a crime has been committed. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Probable cause is "not a high bar" and does not require consideration of all conceivable, relevant evidence. *Kaley v. United States*, 571 U.S. 320, 338 (2014).

In light of Officer Domingo's report, which was based on his real-time viewing of McCoy's conduct, there was probable cause to believe that defendant had committed a crime and was engaging in illegal drug transactions. While Officer Domingo was no longer a sworn officer at the time of McCoy's arrest, the collective knowledge doctrine permitted his fellow officers to rely on his determination of probable cause. Collective knowledge doctrine "allows courts to impute police officers' collective knowledge to the officer conducting a stop, search, or arrest." *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010). Defendant provides no convincing reason, nor any pertinent case citation, to say why this doctrine should not apply here. Contrary to McCoy's suggestion, there is no requirement that the fellow officer be a currently sworn officer for proper application of the collective knowledge doctrine. *See United States v. Heiden*, 508 F.2d 898, 901 (9th Cir. 1974) ("This is not a case of reprehensible police conduct and we discern no reason to hamper law enforcement with meaningless technical distinctions."). Officer Domingo had decades of relevant experience, and so the arresting officers could reasonably rely on his probable cause determination based on his live surveillance via a closed-circuit TV of defendant's conduct.

McCoy's contention that the police should have taken a variety of other steps before the arrest or search is also unavailing. Dkt. No. 7 at 7. The probable cause inquiry is based on the "facts available" at the time of the search. *Florida v. Harris*, 568 U.S. 237, 243 (2013) (citation omitted). There is no requirement that police use a confidential informant or an undercover police officer to obtain further information, as McCoy suggests. Dkt. No. 7 at 5; *see United States v. Yepiz*, 718 F. App'x 456 (9th Cir. 2017) (finding sufficient evidence of probable cause without regard to confidential informant). The Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things considered approach." *Harris*, 568 U.S. at 244. Nothing that the officers on scene observed prior to McCoy's arrest indicated

4

that there was "less than a fair probability that the defendant has committed or is committing a crime." *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007).

None of the cases that McCoy proffers point to a different conclusion, or suggest that officers lacked probable cause in this case. *See* Dkt. No. 7 at 9-11. McCoy refers to an unpublished memorandum of decision in *United States v. Newman*, 563 F. App'x 539 (9th Cir. 2014), to suggest that probable cause was unwarranted in the absence of the reported smell of narcotics, a canine alert and admission by defendant. Dkt. No. 7 at 9. On its own terms, however, *Newman* does not stand for the proposition that those corroborating facts are necessary for an officer to reach a conclusion of probable cause. Similar to the circumstances here, *Newman* concluded there was probable cause even when an initial search did not reveal evidence of a crime. Our circuit found that based on the information known to the officer "at the time he searched the vehicle, coupled with his experience and training, there was a fair probability he would find either drugs or evidence relating to drug crimes" in the vehicle. *Newman*, 563 F. App'x at 541. The same reasoning applies to McCoy's situation.

Defendant also raises *United States v. Cervantes*, 703 F.3d 1135 (9th Cir. 2012), which concluded that police officers had failed to establish probable cause to search the defendant's vehicle. Dkt. No. 7 at 9-10. But unlike *Cervantes*, where the probable cause determination was based, in part, on a conclusory statement that the defendant had obtained a box while inside a "suspected narcotics stash house," 703 F.3d at 1139, the alleged drug transaction here took place in open air and was viewed in real time, via CCTV, by Officer Domingo. These are no mere conclusory statements -- Officer Domingo explained what he saw and the reasons why he believed what he directly viewed meant that defendant possessed methamphetamine and had sold marijuana. Domingo Decl. ¶¶ 12-19.

Defendant's suggestion that *United States v. Del Vizo*, 918 F.2d 821 (9th Cir. 1990), stands for the proposition that a single observation is categorically not sufficient to give rise to probable cause is also inapposite. Defendant reads that case to say that a "few minutes of police observation here" could not have been long enough to establish probable cause. Dkt. No. 7 at 10. That goes too far. *Del Vizo* was a self-described close call because the actions viewed by police

were activities like driving in a counter-surveillance manner, which "might be consistent with innocence." 918 F.2d at 827. No such possible ambiguity is present here, where Officer Domingo directly viewed what he concluded was a drug transaction and possession of narcotics.

McCoy's efforts to distinguish *United States v. Vasquez*, 858 F.2d 1387 (9th Cir. 1988), *cert. denied*, 488 U.S. 1034 (1989), and *California v. Carney*, 471 U.S. 386 (1985), are unpersuasive. Officer Domingo "had fresh, direct, uncontradicted evidence that [McCoy] was distributing a controlled substance from the vehicle, apart from evidence of other possible offenses." *Vasquez*, 858 F.2d at 1391 (quoting *Carney*, 471 U.S. at 395). Officer Domingo directly observed what he believed to be a drug transaction with a zoom lens-- if anything, that is stronger direct evidence than was found sufficient to establish probable cause in either *Vazquez* or *Carney*, neither of which claimed as a basis for probable cause actual viewing of the narcotics being transacted.

A search incident to a lawful arrest is limited in scope. In *Arizona v. Gant*, 556 U.S. 332, 351 (2009), the Supreme Court held that police "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Because McCoy was handcuffed at the time of the search of the automobile, he was not realistically within reaching distance of the passenger compartment. Even so, in light of Officer Domingo's report and continued conversations with Officer Joseph, it was reasonable to believe that the Jetta contained "evidence of the offense of arrest." Consequently, the warrantless seizure of items from defendant's automobile falls into the search incident to a lawful arrest exception to the Fourth Amendment's warrant requirement.

Additionally, courts have recognized a distinct automobile exception to the Fourth Amendment's warrant requirement, which independently authorized the search of defendant's Jetta in this case. *See Johnson*, 913 F.3d at 801 (describing district court as relying on both search incident to lawful arrest and automobile exception to uphold warrantless search of vehicle). A "police officer may conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime." *Id.* at 801; *see also United States v. Ross*, 456 U.S. 798,

823 (1982) (An "individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband."); *Gant*, 556 U.S. at 347 ("If there is probable cause to believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search of any area of the vehicle in which the evidence might be found."). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Rodgers*, 656 F.3d 1023, 1028 (9th Cir. 2011) (internal quotation and citation omitted). Officer Domingo's report adequately provides probable cause under this exception to the warrant requirement for the reasons described above -- based on his observations, there was "a fair probability that contraband or evidence of a crime" would be found in defendant's automobile.

## CONCLUSION

Because there was "no poisonous tree," the subsequent search of McCoy's person at the station house "cannot have been the fruit of an illegal search." *Johnson*, 913 F.3d at 802. The motion to suppress is denied.

**IT IS SO ORDERED.**

Dated: August 14, 2019

_____
JAMES DONATO
United States District Judge