UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. DANIEL LAWRENCE MCCOY, Defendant. | Case No. 09-cr-00337-JD (KAW) **ORDER GRANTING MOTION FOR TEMPORARY RELEASE FROM CUSTODY** Re: Dkt. Nos. 449, 450. |
| UNITED STATES OF AMERICA, Plaintiff, v. DANIEL LAWRENCE MCCOY, Defendant. | Case No. 19-cr-00067-JD-1 (KAW) **ORDER GRANTING MOTION FOR TEMPORARY RELEASE FROM CUSTODY** Re: Dkt. Nos. 90, 91 |

A renewed detention hearing regarding the release of Defendant Daniel Lawrence McCoy was held on April 10, 2020 based on changed circumstances arising out of the COVID-19 pandemic. In 2010, McCoy was convicted of being a felon in possession of a firearm and ammunition, and of possession of cocaine base with the intent to distribute. (CR 09-337, Dkt. No. 246.) In August 2014, McCoy was placed on supervised release. In August 2019, McCoy was convicted of possession of oxycodone and heroin with an intent to distribute, as well as possession of methamphetamine and hydrocodone. (CR 19-67, Dkt. No. 66.) The 2019 convictions are a violation of McCoy's terms of supervised release.

The Court previously ordered McCoy detained, finding that McCoy did not meet his burden by clear and convincing evidence that he was not a danger to the community. (CR 09-337, Dkt. No. 422.) McCoy now moves to re-open the detention hearing, under 18 U.S.C. § 3142(i),

for temporary release from custody. (CR 19-67, Dkt. No. 91 at 4; CR 09-337, Dkt. No. 450 at 4.) In the alternative, McCoy argues that he may be released on a finding of exceptional circumstances per 18 U.S.C. § 3145(c), specifically the ongoing COVID-19 public health emergency. (*Id.* at 4-5.)

The Court finds that the appropriate standard is 18 U.S.C. § 3143, which governs post-conviction release or detention. Further, as McCoy's convictions for violation of 21 U.S.C. § 841 renders him subject to mandatory detention per 18 U.S.C. § 3143(a)(2), McCoy must also establish that there are exceptional reasons why his detention would not be appropriate per 18 U.S.C. § 3145(c). Applying this standard, the Court FINDS that McCoy has established by clear and convincing evidence that he is not a flight risk nor a danger to the community, and that there are exceptional reasons why detention is not appropriate due to his specific high-risk factors. Accordingly, the Court ORDERS McCoy to be temporarily released subject to the additional conditions detailed at the end of this order, which includes 24-hour home detention and electronic location monitoring as administered by the Probation Department.

McCoy is detained at Santa Rita County Jail, an Alameda County facility in Dublin, California, under contract with the United States Marshals Service. This "mega jail" is the third largest facility in California and the fifth largest in the nation. (*See Babu et al. v. Ahern et al.*, Case No. 18-cv-07677-NC, Dkt. No. 61.) It houses inmates in all classification levels including federal detainees. *Id*. Over 29,000 inmates are booked into Santa Rita each year. (*Id.*) As of April 13, 2020, Santa Rita houses 1,979 inmates. (*See Covid-19 Updates*, ALAMEDA COUNTY SHERIFF'S OFFICE, (April 14, 2020 at11:33 a.m.), https://www.alamedacountysheriff.org/admin_covid19.php.)[1]

As of April 13, 2020, fifteen inmates at Santa Rita Jail have tested positive for COVID-19. (*See Covid-19 Updates*.) Thirty inmates are currently categorized as "red," meaning that they are "displaying symptoms consistent with COVID-19." (*Id*.) Fifty-one inmates are categorized as "orange," meaning that they are "considered at increased risk for COVID-19 complications

---

[1] These facts/statistics are taken directly from the release order issued by the Honorable Judge Cousins in 19-cr-00709-LHK, and the statistics have been verified as current through today.

2

(pregnant, older than 65, chronic medical conditions)." (*Id.*) Nine housing units consisting of thirteen total pods are categorized as "yellow," meaning that have had contact with known or suspected COVID-19 and therefore are placed under 14-day quarantine. (*Id.*) Santa Rita has conducted 73 tests for the virus: 42 were negative, 15 were positive, and 16 await results. (*Id.*) A nurse assigned to the jail, as well as a second staff member, have tested positive for COVID-19. (*Id.*; *see also* Angela Ruggiero, *Alameda County Jail Reports Nurse has Tested Positive for Coronavirus*, MERCURY NEWS (Mar. 27, 2020, 5:09 AM), https://www.mercurynews.com/2020/03/26/alameda-county-jail-reports-first-coronaviruscase-a-nurse/.

Title 18 U.S.C. § 3143(a)(2) mandates detention if the defendant is found guilty of an offense described in 18 U.S.C. § 3142(f)(1)(A)-(C). A person subject to detention pursuant to 18 U.S.C. § 3143(a)(2), however, may be ordered released if: (1) he demonstrates by clear and convincing evidence that he is not a flight risk or a danger to the community, and (2) "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Here, McCoy argues that the COVID-19 pandemic constitutes a compelling reason for his release. He contends that his health conditions, which include emphysema, asthma, high blood pressure, and other health issues, render him at risk for serious complications should he contract COVID-19. The Court agrees.

Specifically, McCoy is 63 years old and has been struggling with severe asthma, using an inhaler now and during trial. McCoy also suffers from emphysema and high-blood pressure.

Due to the novel coronavirus pandemic, the country is in "extraordinary times." *In re Extradition of Alejandro Toledo Manrique*, Case No. 19-mc-71055-TSH, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020). This is a global crisis with exponentially increasing infections and hundreds of thousands of deaths. The President of the United States has declared a National Emergency. (*See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).) Community transmission of the virus is widespread in the State of California, which has one of the largest numbers of confirmed cases in the country. *See Cases in U.S.*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

California Governor Gavin Newsom has issued an Executive Order declaring a State of Emergency and directing all Californians to stay home to minimize public interaction. (*See* Executive Order N-33-20, Exec. Dep't State of Cal. (Mar. 19, 2020), *available at* https://covid19.ca.gov/img/N-33-20.pdf.) Counties in the San Francisco Bay Area have instituted and extended shelter-in-place orders requiring social distancing; local schools and businesses are closed.

Our Court has since closed three of its four courthouses, vacated criminal and civil trials, suspended grand jury proceedings, restricted in-person use of its facilities, and limited its operations. (*See* General Order 72 (N.D. Cal. Mar. 16, 2020); General Order 73 (N.D. Cal. Mar. 16, 2020), *amended on* Apr. 2, 2020, *available at* https://www.cand.uscourts.gov/rules/generalorders/.) These restrictions aim to follow guidance from the Centers for Disease Control and Prevention ("CDC") recommending frequent hand-washing, avoiding close contact with other people, cleaning and disinfecting frequently-touched items and surfaces as much as possible, and avoiding groups of more than 10 people. (*See How to Protect Yourself & Others*, CENTER FOR DISEASE CONTROL AND PREVENTION, (Apr. 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.)

As is now clear, the COVID-19 pandemic has reached U.S. jails and prisons. (*See, e.g.,* Timothy Williams, *et al.*, *'Jails are Petri Dishes'*, NEW YORK TIMES (Mar. 31, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html (noting -- as of March 30, 2020—over one hundred positive tests for coronavirus at Cook County jail in Chicago, almost 80 positive tests in Michigan prisons, nearly 200 cases at Rikers Island jail complex in New York, and almost forty cases in federal prisons including one death at the Bureau of Prison's Oakdale, Louisiana facility); *see also United States v. Garlock*, Case No. 18-cr-00418-VC, 2020 WL 1439980, at *1 ("The chaos has already begun inside federal prisons—inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsiders have been suspended, and inmate movement is being restricted even more than usual") (citing Zusha Elinson *et al.*, *Jails Release Prisoners, Fearing Coronavirus Outbreak*, THE WALL STREET JOURNAL (Mar. 22, 2020, 10:00 AM), https://www.wsj.com/articles/jails-release-

prisoners-fearing-coronavirus-outbreak-11584885600).) The Court takes notice of the information presented by the United States Bureau of Prisons at www.BOP.gov under its COVID-19 response tab. As of April 14, BOP reported 446 inmates and 248 staff diagnosed with the virus and 14 inmate deaths.

The Government challenged whether McCoy's medical conditions made him particularly vulnerable, arguing that McCoy never reported any conditions other than high blood pressure. (CR 09-337, Dkt. No. 451 at 15-16; CR 19-67, Dkt. No. 92 at 15-16.) At the hearing, however, the Government acknowledged that McCoy used an inhaler during the trial to treat his asthma. Thus, the Court finds that, even without medical records to prove that McCoy suffers from emphysema, McCoy still has several conditions that put him at high risk, including his age, severe asthma, and high blood pressure.

The Government also argued that McCoy has not shown he is at greater risk of infection at Santa Rita, and that the "risk that Defendant himself will be infected simply as a result of detention is likely low and manageable." (CR 09-337, Dkt. No. 451 at 18; CR 19-67, Dkt. No. 93 at 18.) In support, the Government points to the fact that "as of April 3, 2020, there have been no confirmed cases of COVID-19 among inmates at Santa Rita Jail." (*Id.*)

As Judge Cousins stated in his order rejecting this same argument by the government in another case, "the Court rejects the Government's contention that McCoy's custodial situation does not put him at a meaningfully higher risk of contracting COVID-19. There is no evidentiary, expert witness, or common-sense support for the Government's assessment that McCoy's risk of infection at Santa Rita Jail is 'likely low and manageable.'" (CR 09-337, Dkt. No. 451 at 18; CR 19-67, Dkt. No. 93 at 18; *U.S. v. Daniels*, 19-cr-00709-LHK (NC).) Indeed, in less than two weeks after the Government pointed to the lack of confirmed COVID-19 cases among inmates at Santa Rita Jail, there are already fifteen cases. (*See Covid-19 Updates*.) Further, jails and prisons present extraordinarily dangerous conditions for the spread of the virus. (*See United States v. Stephens*, 2020 WL 1295155 (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infections Diseases 1047 (Oct. 2007)), which found that the "probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and

5

1    treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control

2    expertise"); *see also Xochihua-Jaimes v. Barr*, Case No. 18-cv-71560 (9th Cir. Mar. 24, 2020)

3    (stating that "public health authorities predict" the "rapidly escalating public health crisis" "will

4    especially impact immigration detention centers").) "Social distancing and proper hygiene are the

5    *only* effective means by which we can stop the spread of COVID-19"—and in no place is ensuring

6    these means more "difficult, if not impossible," than in detention centers. *Thakker v. Doll*, Case

7    No. 20-cv-480-JEJ, Dkt. No. 47 at 21 (M.D. Pa. Mar. 31, 2020); *United States v. Gorbman*, Case

8    No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020).

9         Dr. Brie Williams, Professor of Medicine at UCSF with expertise in health issues affecting

10   prisons, recently opined that "[b]ecause inmates live in close quarters, there is an extraordinarily

11   high risk of accelerated transmission of COVD-19 within jails and prisons." *See United States v.*

12   *McCoy*, Case No. 19-cr-00067-JD, Dkt. No. 94, Ex. 2 (Affidavit of Brie Williams, M.D.) at 3. Dr.

13   Williams states that because "[i]nmates share small cells, eat together and use the same bathrooms

14   and sinks," "social distancing in most facilities [is] virtually impossible . . . compounded by

15   inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash hands."

16   *Id*.

17        McCoy argues that his health conditions render him particularly susceptible to serious

18   complications should he contract COVID-19. In particular, the CDC has concluded that

19   individuals over the age of sixty with moderate to severe asthma may be "at higher risk for severe

20   illness from COVID-19." (*Groups at Higher Risk for Severe Illness*, CENTER FOR DISEASE

21   CONTROL AND PREVENTION (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-

22   extra-precautions/groups-at-higherrisk.html.) The necessarily close quarters and limited hygienic

23   options for inmates of the Jail increases their risk of infection, which in turn risks the wellbeing of

24   jail staff, their families, and the general community. Other courts and government officials have

25   recognized that inmates are at particular risk for contracting COVID-19. Alameda County

26   officials, for example, have released over 200 inmates from Santa Rita and the total Santa Rita

27   inmate population has been decreased by more than 500 since March 1. (*See* Megan Cassidy,

28   *Alameda County Releases 250 Jail Inmates Amid Coronavirus Concerns, SF to Release 26*, SAN

1 FRANCISCO CHRONICLE (Mar. 20, 2020, 11:21 PM),

2 https://www.sfchronicle.com/crime/article/Alameda-County-releases-250-jail-inmates-amid-

3 15147332.php. *See also*, Alene Tchekmedyian, *et al.*, *L.A. County Releasing Some Inmates from*

4 *Jail to Combat Coronavirus*, LOS ANGELES TIMES (Mar. 16, 2020, 7:25 PM),

5 https://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-

6 coronavirus (Los Angeles County jail population reduced by 600 individuals over two weeks);

7 Aprile Rickert, *Officials Thin Jail Population to Prevent Spread of COVID-19*, NEWS AND

8 TRIBUNE (Mar. 23, 2020), https://www.newsandtribune.com/news/officialsthin-jail-population-to-

9 prevent-spread-of-covid/article_b3899a6c-6ad8-11ea-8fea-072a24324cc4.html (Indiana counties

10 reduce jail populations to ensure further distance between inmates); Letter to Montana Courts of

11 Limited Jurisdiction Judges (Mont. Sup. Ct. Mar. 20, 2020), available at

12 https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-

13 19%20032020.pdf (Chief Justice of Montana Supreme Court instructing judges to "release,

14 without bond, as many prisoners as you are able" because "due to the confines of [correctional]

15 facilities, it will be virtually impossible to contain the spread of the virus").)

16 The Court FINDS that the unprecedented, extremely serious health risk posed by continued

17 detention, exacerbated by McCoy's health conditions, affects the Court's consideration of whether

18 McCoy constitutes a risk of flight and danger to the community. Although the Court previously

19 found that McCoy was a risk of flight and danger to the community, the COVID-19 pandemic and

20 the reported infections at Santa Rita Jail changes the calculus. McCoy now has serious, potentially

21 life-threatening incentives to obey the conditions of his release. Not only will McCoy be

22 incentivized to comply with the conditions of his release to temporarily remain out of jail, McCoy

23 is further incentivized to remain in place and avoid social contact lest he contracts COVID-19.

24 Additionally, McCoy has further incentives to comply because he is facing less than a five-year

25 sentence. While the Government suggests he is facing a lengthy incarceration, McCoy is likely

26 facing an additional time in custody of less than two years if the Court sentences him as

27 recommended by Probation. (*See* CR 09-337, Dkt. No. 451 at 9; CR 19-67, Dkt. No. 92 at 9.)

28 Thus, McCoy has less incentive to flee based on how much time he is facing, in addition to the

risks of contracting COVID-19 from interacting with others. These changed conditions mitigate McCoy's risk of flight and danger, such that the Court can find that McCoy is no longer a risk of flight or danger to the community during a period of temporary release. Further, McCoy's particular susceptibility to coronavirus and its potentially life-threatening effect constitute an exceptional reason why detention is not appropriate.

The Government's authority regarding exceptional reasons is not to the contrary. (*See* CR 09-337, Dkt. No. 451 at 11-15; CR 19-67, Dkt. No. 92 at 11-15.) Indeed, the Government's quotations support a finding that exceptional reasons exist at this time, as the Court should "also consider circumstances that would render the hardships of prison unusually harsh for a particular defendant," such as "a sufficiently serious illness or injury" or where "incarceration would impose exceptional risks on a defendant involving his physical or mental well-being—risks that might arise as a result of . . . his possessing certain . . . characteristics." *United States v. Garcia*, 340 F.3d 1013, 1019-20 (9th Cir. 2003). Such is the case here, where McCoy has several medical conditions that put him at a high risk of dying from the novel COVID-19 virus if he gets it, and the number of Santa Rita inmates testing positive is on the rise. In short, McCoy's particular circumstances are clearly out of the ordinary; therefore, exceptional reasons exist under § 3145(c).

For these reasons, the Court ORDERS McCoy temporarily released into the custody of his wife, Cassandra Thomas, pursuant to 18 U.S.C. § 3143 under the following conditions:

- McCoy will be supervised by Pretrial Services and Probation.[2]
- McCoy is subject to 24-hour home incarceration to be enforced by location monitoring technology to be determined by Pretrial Services and/or Probation. McCoy may leave the residence only for necessary medical services with the prior approval of Pretrial Services and/or Probation. He may not change his residence without advance approval of Pretrial Services and/or Probation.
- McCoy shall self-surrender on June 15 (60 days from the date of this order), subject

---

[2] The court has been informed by Probation that it will supervise Defendant, and Pretrial Services informed the court that it, too, will supervise him. The court will leave it to the two agencies to coordinate the defendant's supervision.

8

to extension by further Court order. Pretrial Services and/or Probation must make a recommendation to the Court by June 8 as to whether the time period of temporary release should be extended.

- McCoy must maintain video and telephone conferencing capabilities to allow for remote or virtual monitoring by Pretrial Services and/or Probation.
- McCoy must report and disclose to Pretrial Services and/or Probation when any cohabitant, including himself, exhibits any symptom of any illness.
- McCoy must comply with the Shelter-in-Place order issued by California Governor Gavin Newsom, dated March 19, 2020, and any further extensions of that order. *See* Executive Order N-33-20, Exec. Dep't State of Cal. (Mar. 19, 2020).

The Court sets a further telephonic conference for **April 28, 2020, at 1:30 p.m.** to determine whether any additional conditions of release, or modifications, are appropriate.

This temporary release order is effective immediately and will be communicated to the USMS, Santa Rita Jail, Probation, and Pretrial Services.

IT IS SO ORDERED.

Dated: April 14, 2020

KANDIS A. WESTMORE
United States Magistrate Judge